UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELO COBBINS, | ) |
| Petitioner, | ) ) ) |
| | ) No. 22 C 1041 |
| v. | ) ) Judge Sara L. Ellis |
| ANTHONY WILLS, Warden, Menard Correctional Center, | ) ) ) |
| Respondent.[1] | ) ) |

**OPINION AND ORDER**

Petitioner Angelo Cobbins, currently incarcerated at Menard Correctional Center, is serving a thirty-five-year sentence for first degree murder, concurrent with a four-year term for robbery. Cobbins has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Cobbins raises three grounds for relief in his amended petition: (1) the trial court erred in denying his motion to suppress his post-arrest electronic recorded interview ("ERI"); (2) he received ineffective assistance of counsel because his trial counsel did not call his cousin and co-defendant, Sharee Musgray, as a witness in his defense; and (3) the trial court imposed an excessive and improper sentence in violation of Illinois and federal law. Because Cobbins has procedurally defaulted his first claim, the Court cannot address claims based on violations of Illinois law. Moreover, Cobbins has not shown that the Illinois Appellate Court unreasonably applied clearly established federal law as to his remaining cognizable claims. The Court, therefore, denies Cobbins' amended petition.

---

[1] The Court substitutes Anthony Wills, the current warden at Menard Correctional Center, as the proper Respondent in this matter. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

1

## BACKGROUND[2]

On January 4, 2011, two males severely beat and robbed Benjamin West. West died from his injuries. The State charged fifteen-year-old Musgray with first degree murder and seventeen-year-old Cobbins with first degree murder and robbery. Musgray pleaded guilty to first degree murder, and the state court sentenced him to twenty years' imprisonment. A jury convicted Cobbins of first degree murder and robbery, and the state court sentenced him to thirty-five years' imprisonment on the first degree murder conviction and a concurrent four-year term on the robbery conviction.

### I. Motion to Suppress

After Cobbins' arrest, detectives conducted an ERI, in which Cobbins admitted to participating in the beating and robbery of West. Specifically, Cobbins stated that he asked West if he could borrow a lighter and then tried to walk off with the lighter. According to Cobbins, when West touched Cobbins, Musgray hit West, who fell to the ground. Cobbins admitted that he also kicked and punched West multiple times, and then took off West's clothes. Cobbins stated he was drunk at the time and thought West was alive when he and Musgray left the scene. Cobbins also admitted that he told his cousin, Terrence Love, what he had done to West when he returned home.

Prior to trial, Cobbins filed a motion to suppress the ERI, arguing that he lacked the ability to understand his *Miranda* rights due to his mental or psychological capacity and condition. The state court held a hearing on the motion.

At the hearing, Detective James Hall, who conducted the ERI with Detective Dante

---

[2] The Court presumes that the state court's factual determinations are correct for the purpose of habeas review because Cobbins has not pointed to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The Court thus adopts the state court's recitation of the facts and begins by summarizing the facts relevant to Cobbins' petition.

Servin, testified that they advised Cobbins of his *Miranda* rights. The court viewed the ERI, which showed that the detectives provided Cobbins with each *Miranda* right separately. Cobbins asked what it meant to have the right to remain silent, and the detectives explained that it meant Cobbins did not have to say anything. Cobbins indicated he understood all of the *Miranda* rights. Hall testified that, in his view, Cobbins had no difficulty understanding his rights. He acknowledged that none of Cobbins' family members were present during the ERI. Hall further testified that Cobbins had been handcuffed to a railing during the interrogation because the crime lab planned to photograph Cobbins' hands for evidence and that, once that occurred, the detectives removed the handcuffs and allowed Cobbins to move around the room.

Dr. Ronald Whitmore, the principal of the school where Cobbins attended seventh and eighth grade, testified that Cobbins was in special education classes due to a learning disability. Cobbins' mother, Sharon Stanley, testified that Cobbins was hyperactive, had difficulty reading, and attended special education classes. She indicated that Cobbins dropped out of high school because of his reading difficulties. The parties also stipulated to the admission into evidence of Cobbins' school records.

Although Cobbins argued that he did not voluntarily waive his *Miranda* rights given his age, learning disability, and the fact that he was handcuffed and his parents were not in the room during the interrogation, the court disagreed. The court denied Cobbins' motion to suppress, finding that Cobbins' school records did not go to his mental capacity but rather reflected Cobbins' failure to apply himself and to show up in school. The court found that Cobbins' handcuffing did not affect the interrogation, particularly because the detectives later removed the handcuffs. The court concluded that Cobbins understood his *Miranda* rights and voluntarily made his statement.

## II. Cobbins' Trial and Conviction

The evidence at trial established that on the morning of January 4, 2011, two males beat West outside of a housing complex at 1338 West Hastings Street, Chicago, Illinois. The males took off West's clothes, threw them on the ground, took something from West's pockets, and ran away. After police arrived, West was taken to the hospital, where he died. An autopsy revealed that West suffered eleven external injuries, as well as internal injuries such as swelling in his brain and bleeding under his scalp. The medical examiner listed his cause of death as a homicide due to blunt force trauma, with hypothermia as a contributing factor.

A detective testified that as part of the investigation into West's death, he reviewed video surveillance footage, which showed a green minivan that the detective believed was relevant to the crime. Detectives then tracked down the minivan to Cobbins' apartment. Cobbins' mother, Stanley, consented to a search of the minivan and the apartment. The detectives found Cobbins sleeping in a back bedroom. They also found jeans and boots with red stains, two lighters, and a silver ring with red stains in the creases. The detectives then took Cobbins to the police station. At trial, the state introduced evidence that the blood from the metal ring, boots, and jeans all matched West's DNA.

Jasmine Webster, the mother of Cobbins' child, and Tinithia Traylor, her sister, lived at the housing complex outside of which West was beaten. They corroborated seeing Cobbins beat West the morning of January 4, 2011. Terrence Love, Cobbins' cousin, testified that he was at Cobbins' house the morning of January 4, 2011 and could not remember if Cobbins had left the house that morning. But Love had previously given a videotaped statement and testified before the grand jury, where he had indicated that Cobbins left in the green minivan and told Love when he came home that he had gotten into it with "a clucker," a term Love explained to mean a drug

4

addict. *People v. Cobbins*, 2021 IL App (1st) 181660-U, ¶ 20. At trial, Love indicated he could not recall making these statements and claimed to have been coerced into making them. The assistant state's attorneys involved in obtaining Love's videotaped statement and grand jury testimony testified, and the court admitted Love's prior statements into evidence.

The jury saw Cobbins' ERI, in which he admitted to beating West and taking off his clothes. Cobbins also testified on his own behalf, contradicting the statements he made in the ERI. Cobbins did admit that he drove in the green minivan with Musgray to the housing complex on Hastings Street and that he was high and drunk. But he testified that Musgray asked West for a light and then started swinging at West, hitting and kicking West until he fell to the ground. Cobbins claimed he never hit or kicked West and tried to stop the fight instead. Cobbins testified that Musgray took off West's clothes and that the two of them then returned to his house. Cobbins claimed that he got West's blood on his boots because he stood near West when Musgray kicked him. He also stated that he took responsibility for kicking and hitting West in the ERI because he sought to protect Musgray, his younger cousin. During his testimony, Cobbins sought to introduce an affidavit from Musgray, but the court sustained the state's objections. Musgray's affidavit stated that Musgray hit West and that Cobbins had nothing to do with West's death.

At the close of the case, the jury found Cobbins guilty of first degree murder and robbery.

### III. Post-Trial Proceedings

After trial, new counsel entered an appearance for Cobbins. Cobbins filed a motion for a new trial, as well as a supplemental motion for a new trial. The supplemental motion raised the argument that Cobbins received ineffective assistance of trial counsel because counsel did not call Musgray to testify. The trial court denied the motion, concluding that trial counsel's

5

decision not to call Musgray amounted to a matter of trial strategy.

At sentencing, the court sentenced Cobbins to concurrent sentences of thirty-five years for first degree murder and four years for robbery. The court indicated that it considered Cobbins' learning disability and substance abuse issues, as well as Cobbins' age at the time of the offense. The court noted that Cobbins came from a loving home, that no evidence of peer pressure existed, and that it did not see much potential for rehabilitation given that Cobbins had been charged with six cases of public indecency in jail while awaiting trial. The court also indicated that Cobbins seemed to lack remorse for the serious crime committed.

## IV. Direct Appeal

Cobbins appealed to the Illinois Appellate Court with the assistance of counsel. Cobbins claimed that (1) the trial court erred in denying his motion to suppress the ERI; (2) his trial counsel provided ineffective assistance by failing to call Musgray as a witness; and (3) his murder sentence was excessive under Illinois law and *Miller v. Alabama*, 570 U.S. 460 (2012). On May 14, 2021, the Illinois Appellate Court affirmed Cobbins' conviction. The Illinois Appellate Court concluded that Cobbins forfeited the argument concerning his motion to suppress by not raising it in his post-trial motion. The court also determined that Cobbins could not show that trial counsel's decision not to call Musgray to testify prejudiced him. Finally, the Illinois Appellate Court concluded that the trial court did not abuse its discretion in sentencing Cobbins.

Cobbins filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, raising the same three issues. The Illinois Supreme Court denied the PLA in September 2021. Cobbins filed a petition for writ of certiorari, which the United States Supreme Court denied in January 2022.

6

V.  **State and Federal Post-Conviction Proceedings**

Cobbins filed his original federal habeas corpus petition in this Court on February 28, 2022. The Court then granted Cobbins a protective stay to allow him to pursue post-conviction relief in state court. Cobbins filed a *pro se* post-conviction petition in state court on January 4, 2023, raising the same three issues he raised on direct appeal. The state trial court denied his post-conviction petition on March 14, 2023. Cobbins did not appeal this denial. He then returned to federal court to pursue his federal habeas petition, filing an amended petition on August 14, 2024.

## LEGAL STANDARD

A petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. Whether a state court's application of Supreme Court precedent is unreasonable is judged by an objective standard. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

7

# ANALYSIS

Cobbins raises the following arguments in his amended habeas petition. First, Cobbins contends that the trial court erred in denying his motion to suppress the ERI. Second, Cobbins argues that his trial counsel was ineffective for failing to call Musgray as a witness. Finally, Cobbins argues that his sentence is excessive under Illinois law and *Miller*. The Court addresses each argument in turn.

## I.     Motion to Suppress

A petitioner can procedurally default on a federal claim in two ways: (1) if the petitioner fails to exhaust the claim on one complete round of state court review, or (2) if the state court decides the claim on a state procedural ground. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). Respondent argues that Cobbins has procedurally defaulted his first claim concerning the denial of his motion to suppress based on the second avenue for procedural default. Indeed, the Court cannot review a claim decided by a state court where "the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Here, the Illinois Appellate Court concluded that Cobbins had forfeited his claim of error with respect to the trial court's ruling on the motion to suppress because he did not raise that argument in his post-trial motion. *Cobbins*, 2021 IL App (1st) 181660-U, ¶ 35. "Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial," with "[t]he failure to comply with this requirement amount[ing] to waiver of the claim." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). In other words, Cobbins' forfeiture of his claim concerning the motion to suppress amounts to an independent and adequate state ground for purposes of barring federal habeas review. *See Flint v. Carr*, 10 F.4th

786, 794 (7th Cir. 2021) ("forfeiture under state law is almost always" an independent and adequate state ground); *Tyler v. Pfister*, No. 18 C 1449, 2024 WL 3161656, at *7 (N.D. Ill. June 25, 2024) (state court's clear and express reliance on forfeiture was an independent and adequate state ground).

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (citation omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Cobbins has not provided this Court with any argument to excuse the procedural default of his claim. Therefore, the Court will not consider his defaulted claim. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (petitioner not entitled to consideration of his procedurally

9

defaulted claims where he did not present any argument to excuse the defaults).

## II. Ineffective Assistance of Counsel

To prevail on his ineffective assistance of counsel claim, Cobbins must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In considering the first prong, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and may not let hindsight interfere with its review of counsel's decisions. *Id.* at 689. For the second prong, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This means a "substantial," not just "conceivable," likelihood of a different outcome in the case. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). The Court need not address both prongs of the *Strickland* test if one provides the answer. That is, if the Court determines that the alleged deficiency did not prejudice Cobbins, it need not consider the first prong. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014). In reviewing the Illinois Appellate Court's decision, the Court must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen*, 564 U.S. at 188).

Cobbins claims that his trial counsel provided ineffective assistance because he failed to call Musgray to testify at trial. Cobbins contends that Musgray's testimony would have helped his defense because Musgray stated in an affidavit that only he, and not Cobbins, beat West. In reviewing this claim, the Illinois Appellate Court first identified the relevant standard of review under *Strickland* and then rejected Cobbins' ineffective assistance claim, finding no prejudice.

10

Cobbins cannot show that the Illinois Appellate Court's decision was contrary to clearly established federal law, given its correct recitation of the governing legal standard for such a claim. *Cobbins*, 2021 IL App (1st) 181660-U, ¶ 37; *see Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("A decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of § 2254(d)(1)."). Cobbins also has not shown that the Illinois Appellate Court unreasonably applied *Strickland* in denying his ineffective assistance claim. The Illinois Appellate Court determined that, even assuming that Musgray would have corroborated Cobbins' testimony at trial, Musgray's testimony would not have altered the outcome of the trial because the jury had overwhelming evidence of Cobbins' guilt, including Cobbins' ERI, in which he confessed to hitting and kicking West, Webster's eyewitness testimony of seeing Cobbins hit and kick West, and the recovery of West's blood from Cobbins' jeans and boots. *Cobbins*, 2021 IL App (1st) 181660-U, ¶¶ 38–39. Given this evidence and the fact that Musgray would have been impeached by his own ERI in which he told police that Cobbins punched, struck, and beat West and threatened to beat Musgray if Musgray did not take things from West, as well as Musgray's guilty plea in exchange for a twenty-year sentence, the Court agrees that Musgray's testimony does not suggest a reasonable probability of a different outcome if introduced at trial. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *Morales v. Johnson*, 659 F.3d 588, 600–02 (7th Cir. 2011) (although counsel's performance was deficient, it did not prejudice petitioner where the prosecution presented two eyewitnesses and their testimony was corroborated by physical evidence).

Therefore, Cobbins cannot show prejudice, and the Court need not consider whether

Cobbins' counsel's actions proved constitutionally insufficient. *Thill v. Richardson*, 996 F.3d 469, 476 (7th Cir. 2021) ("Given that Thill's arguments concerning the prejudice prong fail, we decline to address whether his counsel's failure to object to the prosecutor's comments on Thill's silence constituted deficient performance."). The Court denies Cobbins' ineffective assistance of trial counsel claim.

### III. Excessive Sentence

Finally, the Court turns to Cobbins' contention that he received an excessive sentence under Illinois law and in violation of the Eighth Amendment under *Miller v. Alabama*, 567 U.S. 460 (2012). Initially, the Court cannot address Cobbins' claim that his sentence violates Illinois law. Federal courts may not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Instead, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Cobbins' contention concerning the application of Illinois sentencing rules does not implicate federal law and so does not present a cognizable federal habeas claim. *Dellinger*, 301 F.3d at 764.

As for Cobbins' claim that his thirty-five-year sentence violates the Eighth Amendment, that claim has no merit. Although the Illinois Appellate Court did not expressly address whether Cobbins' sentence violates *Miller v. Alabama*, which prohibits mandatory life without parole sentences for juvenile offenders, 567 U.S. at 470, the Court presumes that it adjudicated the issue on the merits because Cobbins appropriately raised the issue through one full round of review, *Johnson v. Williams*, 568 U.S. 289, 293 (2013). *Miller*, however, has no applicability to Cobbins' case, given that he did not receive a mandatory sentence of life without parole. Instead, Cobbins faced between twenty to sixty years in prison, 730 Ill. Comp. Stat. 5/5-4.5-

20(a), with his thirty-five-year sentence on the murder charge falling within that range. Because *Miller* did not preclude his sentence, Cobbins' challenge based on *Miller* does not have merit. *See Wilson v. Neal*, 108 F.4th 938, 949–50 (7th Cir. 2024) (petitioner not entitled to habeas relief based on allegedly de facto life sentence imposed on juvenile offender because "*Miller* framed its holding in terms of mandatory sentences of *life without parole*" and the Supreme Court "did not specify how its reasoning might or might not apply (a) to sentences of life without parole imposed by exercise of judicial discretion or (b) to sentences imposing terms of years that may or will amount, in effect, to life sentences" or "reach the question (c) of how courts might determine reliably when a long sentence of years should be deemed a de facto life sentence, if indeed its reasoning extends to such sentences").

## IV.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that

debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that Cobbins has not made a substantial showing of the denial of a constitutional right, nor would reasonable jurists find the Court's assessment debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Cobbins' amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Court also declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Dated: October 9, 2025

SARA L. ELLIS
United States District Judge